**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Morgan A. JOE, Sr.,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James E. BAYLOR, Jr.,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Alton L. SKEETER,**
**Defendant–Appellant.**

**Nos. 90–5005, 90–5006 and 90–5022.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 2, 1990.

Decided March 4, 1991.

---

Robert Dale Seabolt, Mays & Valentine, Richmond, Va., Frederick Thomas Stant, Jr., Clark & Stant, P.C., Virginia Beach, Va., argued, for defendants-appellants; Wayne Lustig, Edward E. Scher, Mays & Valentine, Richmond, Va., on brief, for defendant-appellant Joe; Stephen C. Swain, S. Geoffrey Glick, Clark & Stant, P.C., Virginia Beach, Va., on brief, for defendant-appellant Baylor; Thomas B. Shuttleworth, Judith M. Cofield, Shuttleworth, Ruloff, Giordano & Kahle, P.C., Virginia Beach, Va., on brief, for defendant-appellant Skeeter.

Robert William Wiechering, Asst. U.S. Atty., Norfolk, Va., argued, for plaintiff-appellee; Henry E. Hudson, U.S. Atty., James A. Metcalfe, Asst. U.S. Atty., Norfolk, Va., C. Patrick Hogeboom, III, Gordon Kromberg, U.S. Dept. of Justice, Washington, D.C., on brief, for plaintiff-appellee.

Before CHAPMAN and WILKINS, Circuit Judges, and STAMP, District Judge for the Northern District of West Virginia, sitting by designation.

WILKINS, Circuit Judge:

Morgan A. Joe, Sr., Alton L. Skeeter, and James E. Baylor, Jr. appeal their convictions resulting primarily from their participation in a kickback scheme involving United States Navy contracts.[1] The principal error assigned by defendants Joe and Skeeter is the alleged exercise by the government of its peremptory challenges in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We conclude that the district court failed to make the factual determinations necessary for this court to review the *Batson* issue and remand the cases of Joe and Skeeter to the district court for further proceedings. We affirm Baylor's conviction.

### I.

Joe and Skeeter, who are black, were vice presidents of Systems Management American Corporation ("SMA"). The Small Business Administration awarded contracts to SMA on behalf of the Navy that included a provision that limited the amount of profit SMA could earn. In order to circumvent this contractual profit limitation, Joe and Skeeter conspired with subcontractors and suppliers who, in return for business from SMA, submitted invoices inflated by ten percent for the services and goods provided to SMA. SMA paid these invoices and thereby increased its overhead costs reimbursed by the government. The amount by which the invoices were inflated was then funnelled to Joe, Skeeter, and other coconspirators. Baylor, who is white, was vice president and general manager of Baylor Corporation, a subcontractor that transacted business with SMA, and was one of those involved in the kickback scheme.

Prior to voir dire, each juror completed a questionnaire requesting general background information. Additionally, each juror completed a Federal Court Juror Qualification Questionnaire that solicited the juror's age, address, race, and occupation. The court made this information available to the parties prior to empaneling the jury. During voir dire, the district court and the attorneys questioned the prospective jurors individually.

The attorneys agreed to follow a procedure different from that traditionally followed in criminal trials in selecting a jury. The clerk drew the names of thirty prospective jurors and placed them on a list. This number was sufficient to constitute a twelve-member panel after the defendants exercised their twelve peremptory challenges and the government exercised its six

---

1. Since our decision does not turn on the numerous charges involved, we need not enumerate them in detail.

peremptory strikes. The government and defendants alternated striking from the list. Of the thirty individuals chosen, nineteen were white and eleven were black. Four alternate jurors were selected in a similar fashion: the clerk drew eight names at random and placed them on a list, and the government and defense each exercised two strikes.

In exercising its eight peremptory challenges, the government struck six black jurors including five from the panel and one alternate. The only white juror the government struck from the panel was George Bell, a prospective juror whom the government had unsuccessfully challenged for cause. Six black jurors initially were seated on the petit jury. Several jurors seated were excused during the course of the trial and replaced by alternates. The jury that ultimately deliberated and returned its verdicts of guilty included five black members.

Prior to the jury being sworn and the trial commencing, defendants moved to dismiss the jury on the basis that the government exercised its peremptory strikes in a racially discriminatory manner. The district court refused to hold a hearing and summarily denied the motion. The court required, however, that the government meet with a court reporter the day after the jury was selected, out of the presence of the court and defendants, and dictate to the court reporter its reasons for striking the six black jurors. Without reviewing the proffered explanations, the court sealed the record containing the reasons submitted by the government.

At the conclusion of a seven-week trial, defendants renewed their *Batson* motion. They requested that the trial court address the question of whether they had presented a prima facie case for a *Batson* violation and, if so, review the reasons articulated by the government to determine if the explanations were racially neutral. The trial court did not rule on whether the events during voir dire constituted a prima facie case under *Batson* or whether the reasons articulated by the government were racially neutral. Despite its resistance to addressing this issue, the district court opened the sealed record, permitted defen-

dants to review the enclosed explanations, and allowed the parties to present their arguments for the record. The court then affirmed its earlier denial of defendants' motion apparently on the basis that since black jurors were seated and participated on the jury no *Batson* violation could occur.

## II.

■ The exercise of peremptory challenges by the government in a racially discriminatory manner violates a defendant's right to equal protection. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). A defendant may establish a prima facie case under *Batson* by showing that "he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Id.* at 96, 106 S.Ct. at 1723 (citation omitted). A defendant may rely upon the fact that the nature of peremptory strikes permits those who are inclined to discriminate to do so. A defendant must show facts sufficient to raise an inference of intent by the government to discriminate based on all of the relevant circumstances. *Id.; United States v. Grandison,* 885 F.2d 143, 146 (4th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2178, 109 L.Ed.2d 507 (1990). Although the presence of members of a defendant's race on a jury may weigh against a finding of discrimination, a defendant is not automatically foreclosed from establishing a prima facie case of discrimination under *Batson* even when members of the defendant's racial group were seated. *Grandison,* 885 F.2d at 147.

■ If a defendant presents a prima facie case of discrimination, the burden shifts to the government to come forward with a racially neutral explanation for the use of its strikes. *Id.* at 146. To satisfy this requirement, the proffered reasons must bear some relationship to the case at bar. If the government offers explanations that are facially neutral, a defendant may nevertheless show purposeful discrimination by proving the explanations pretextual. *See United States v. Lane,* 866 F.2d 103, 106 (4th Cir.1989).

■ The district court erred in ruling that a *Batson* violation did not occur since members of the defendants' racial group were seated on the jury. As this court noted in *Lane*, "striking only one black prospective juror for a discriminatory reason violates a black defendant's equal protection rights, *even when other black jurors are seated* and even when valid reasons are articulated for challenges to other black prospective jurors." *Id.* at 105 (emphasis added). Thus, while the fact that black jurors were seated is entitled to substantial consideration, it is not dispositive of this issue and does not preclude a finding that defendants established a prima facie violation of *Batson.*

■ When determining whether a prima facie case of discrimination has been shown, the district court may consider the proportion of black jurors stricken compared with the composition of the venire. *See Batson*, 476 U.S. at 97, 106 S.Ct. at 1723 ("a 'pattern' of strikes against black jurors ... might give rise to an inference of discrimination"). The district court may also consider any questions or remarks made by the government during voir dire examination and in its exercise of challenges that tend to either support or negate an inference of discrimination. *Id.* The composition of the jury may be considered as part of the total relevant circumstances upon which a determination of discrimination in jury selection is made, but it is not dispositive of that issue. *Grandison*, 885 F.2d at 147.

### A.

■ The procedure followed by the trial court—permitting the government to make a record of its reasons for striking prospective black jurors outside the presence of the court, deferring consideration of the *Batson* issue until after trial, and failing to rule at each step of the required analysis— is not the preferable one. Allowing the government to state its reasons for striking outside the presence of the court deprived the district court of the opportunity to evaluate the credibility of the government's representative as reasons for exercising peremptory strikes were stated. *Cf. Grandison*, 885 F.2d at 146 (determination

of intentional discrimination is a factual finding largely turning on evaluation of credibility; therefore, ruling by district court on this issue entitled to great deference). Furthermore, by delaying a *Batson* hearing until after trial, a district court is no longer in a position to cure the violation during the jury selection process should a violation have occurred. The sole remedy remaining is the grant of a new trial, relief that requires an additional and unnecessary expenditure of judicial and litigant resources since a new trial could have been avoided by a timely decision. Additionally, the failure of the district court to rule at each step of the *Batson* analysis deprives this court of the benefit of its factual determinations and the reasons supporting its ultimate holding.

We caution that the favored method for a district court to use in evaluating a *Batson* challenge is initially to determine whether the defendant has shown a prima facie violation when the issue is first raised. If the court finds a prima facie case of discrimination, it should require the government to articulate reasons for exercising its peremptory challenges to remove members of the defendant's racial group. The court should then determine if the reasons presented by the government are facially neutral. If so, the court should provide the defendant with the opportunity to establish pretext and then issue a specific ruling on each juror in question supported by its findings of fact and its rationale for the ruling.

### B.

■ Defendants urge us to conduct a review of the reasons offered by the government and determine in the first instance whether it exercised its strikes in a discriminatory manner. They suggest that the record is sufficiently developed to permit us to decide the issue without remand. Generally this court will not reexamine the determination of a district court on the existence of a prima facie *Batson* violation and will proceed to consider the proffered explanations when the government has articulated its reasons for striking on the record. *Lane*, 866 F.2d at 105. The efficacy of this rule, however, stems from the

**104**

district court having already made findings upon the factual issues. We are not well positioned to conduct this important analysis with only a cold record and without the benefit of findings and supporting reasons of the trier of fact. The parties are not present before this court to permit us to judge their credibility or to adequately follow-up with our inquiry to further explore the validity of the various arguments the parties may advance. Consequently, we are compelled to remand the cases of Joe and Skeeter to the district court with instructions to conduct a *Batson* violation analysis.

### III.

Defendants raise numerous additional issues that they argue entitle them to a new trial or acquittal as a matter of law. We have carefully reviewed the remainder of these issues, many of which are frivolous, and find them to be without merit.

AFFIRMED IN PART AND REMANDED IN PART.