59 F.3d 168
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Yvonne TUNSTALL, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Jerretta HATCHER, Defendant-Appellant.
 Nos. 94-5736, 94-5840.
 United States Court of Appeals, Fourth Circuit.
 Decided June 21, 1995.
 
 ARGUED: Steven D. Benjamin, BENJAMIN & ASSOCIATES, Richmond, Virginia, for Appellant Hatcher; Craig Stover Cooley, Richmond, Virginia, for Appellant Tunstall.
 Stephen Wiley Miller, Assistant United States Attorney, Richmond, Virginia, for Appellee.
 ON BRIEF: Betty Layne DesPortes, BENJAMIN & ASSOCIATES, Richmond, Virginia, for Appellant Hatcher.
 Helen F. Fahey, United States Attorney, Richmond, Virginia, for Appellee.
 OPINION
 PER CURIAM:
 
 
 1
 Yvonne Tunstall and Jerretta Hatcher appeal their convictions for conspiracy to commit mail fraud and theft of public money. See 18 U.S.C.A. Sec. 371 (West 1966 & Supp.1995).[1] They principally assert that the district court erred in concluding that the Government presented race-neutral explanations for its peremptory strikes of potential black jurors. We affirm.
 
 I.
 
 2
 In 1989, the United States government instituted a program to reimburse Medicare recipients for ambulance transportation expenses that previously had not been covered by Medicare. Ernest Brooks, who administered the reimbursement program for an insurance company in Richmond, Virginia, devised a fraudulent scheme to embezzle money from the program. Brooks and a co-worker recruited individuals who provided Brooks with information regarding Medicare beneficiaries. He would then have checks mailed to these recruits, ostensibly to reimburse them for ambulance transportation expenses that they had incurred on behalf of the beneficiaries. The recruits would negotiate the checks and share the proceeds with Brooks.
 
 
 3
 The evidence at trial established that Tunstall and Hatcher participated in the scheme. Each received two checks that had been mailed to them at different addresses. After negotiating the checks and returning a significant portion of the proceeds to Brooks or his coworker, each profited by more than $5,000.
 
 
 4
 During jury selection, the Government exercised one of its peremptory challenges to strike the only prospective black juror and its only alternate peremptory challenge to strike one prospective black alternate juror. After the defense objected to these peremptory challenges under Batson v. Kentucky, 476 U.S. 79 (1986), the district court required the Government to proffer its reasons for the strikes. As to the prospective juror, the prosecutor stated that he "had some concerns about her alertness" because he "noticed ... her closing her eyes" several times and noticed that "she ... was looking around to see what she should be doing" while the panel was being sworn. He also said that he "had some concerns about [her] employment as a cook's helper. It is a quirk that I have." He then explained that he struck the prospective alternate juror due to her young age. The defense did not argue further, and the district court concluded that no Batson violation had occurred.
 
 II.
 
 5
 The Supreme Court has established a three-step process for courts to follow in evaluating a Batson challenge: (1) the opponent of the strike must make a prima facie showing of racial discrimination; (2) the proponent of the strike is then required to present a race-neutral explanation for the strike; and (3) the trial court must determine whether the opponent of the strike has carried his burden of proving purposeful racial discrimination. Purkett v. Elem., 115 S.Ct. 1769, 1770-71 (1995) (per curiam).[2] Appellants allege that the district court erred in finding that no Batson violation occurred because, they claim, the Government failed to provide race-neutral explanations for its peremptory challenges. Specifically, Appellants insist that to satisfy step 2, the Government was required to advance a clear and reasonably specific explanation for its strikes that bore some relationship to the case at bar. See Batson, 476 U.S. at 98 & n. 20; United States v. Joe, 928 F.2d 99, 102 (4th Cir.), cert. denied, 502 U.S. 816 (1991). However, the Supreme Court in Purkett recently rejected this argument.
 
 
 6
 To establish a race-neutral explanation to satisfy step 2, a party simply must present
 
 
 7
 an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.
 
 
 8
 Hernandez v. New York, 500 U.S. 352, 360 (1991) (plurality). Step 2 "does not demand an explanation that is persuasive or even plausible"; indeed, the justification given may even be "silly or superstitious." Purkett, 115 S.Ct. at 1771.
 
 
 9
 The explanations advanced by the Government here--lack of attentiveness, youth, and employment as a "cook's helper"--are all characteristics or factors other than the race of the potential jurors. Also, a discriminatory intent is not inherent in any of these reasons. Thus, the Government presented race-neutral explanations, and we accordingly affirm the decision of the district court to reject the Batson challenge.[3]
 
 III.
 
 10
 We conclude that none of Appellants' remaining claims have sufficient merit to warrant extended discussion. First, the district court did not abuse its discretion in denying Tunstall's request for a mistrial after the Government improperly inquired of a Government witness whether a polygraph examination had been administered to a prospective defense witness. See United States v. West, 877 F.2d 281, 287-88 (4th Cir.), cert. denied, 493 U.S. 869 (1989). The trial court properly concluded that a curative instruction was sufficient to remedy the error because the jury was not informed whether the witness had failed the test and the prospective witness' testimony was tangential to Tunstall's case. See United States v. Tedder, 801 F.2d 1437, 1444-45 (4th Cir.1986), cert. denied, 480 U.S. 938 (1987).
 
 
 11
 Next, the Government did not violate Hatcher's due process rights by failing to disclose certain hospital records prior to trial. See Brady v. Maryland, 373 U.S. 83, 87 (1963). The records, which were subpoenaed by both parties, were in the possession of a neutral third party. See Epperly v. Booker, 997 F.2d 1, 9 (4th Cir.) (no Brady violation when "[t]he evidence was available from other sources through the efforts of a diligent defense attorney") (internal quotation marks omitted), cert. denied, 114 S.Ct. 611 (1993). Further, the Government made its copies available when it discovered that Hatcher had not received them, and Hatcher was able to make effective use of them at trial. See United States v. Smith Grading & Paving, Inc., 760 F.2d 527, 532 (4th Cir.), cert. denied, 474 U.S. 1005 (1985).
 
 
 12
 Also, the trial court did not abuse its discretion in denying Hatcher's motion for a new trial based on newly discovered evidence. See United States v. Bynum, 3 F.3d 769, 773 (4th Cir.1993), cert. denied, 114 S.Ct. 1105 (1994). Hatcher's sole basis for the motion was an unsworn statement by Brooks alleging that she was innocent and was not aware of the fraudulent nature of the scheme. Without regard to whether a post-trial statement of a coconspirator who refused to testify at trial may constitute evidence that is "newly discovered," see United States v. Dale, 991 F.2d 819, 838-39 (D.C.Cir.), cert. denied, 114 S.Ct. 286, and cert. denied, 114 S.Ct. 650 (1993), it is clear that this statement, combined with the considerable circumstantial evidence of Hatcher's guilt, "would not probably result in acquittal at a new trial," Bynum, 3 F.3d at 774.
 
 
 13
 We have carefully considered all of the other arguments presented by Appellants and find them to be without merit. Accordingly, we affirm.
 
 AFFIRMED
 
 
 [1]
 Hatcher was also convicted of two counts of aiding and abetting mail fraud. See 18 U.S.C.A. Sec. 1341 (West Supp.1995)
 
 
 [2]
 Because the trial court required the Government to justify its strikes, we may not consider whether Appellants made a prima facie showing at step 1. See Hernandez v. New York, 500 U.S. 352, 359 (1991) (plurality) (Once the Government offers a race-neutral explanation and the trial court rules, the preliminary question of whether the prima facie showing was made becomes moot.). However, we note that the three-step process contemplates that the challenging party will be required to make a prima facie case, i.e., to show that the circumstances, such as the proponent following a pattern of strikes against members of a particular race, give rise to an inference of purposeful discrimination. See United States v. Bergodere, 40 F.3d 512, 515-16 (1st Cir.1994) (explaining requirements of a prima facie case), cert. denied, 115 S.Ct. 1439 (1995); see also Edmonson v. Leesville Concrete Co., 500 U.S. 614, 631 (1991)
 
 
 [3]
 Additionally, Appellants claim that at least one explanation proffered for the strikes was not race neutral because the Government did not assert that it had struck all prospective jurors, whether black or white, who had the identified characteristic. The proponent has no duty to establish that its strikes were used consistently to satisfy step 2; rather, the challenging party may indicate at step 3 that strikes were used inconsistently as part of its burden of proving intentional discrimination. See United States v. McMillon, 14 F.3d 948, 953 n. 5 (4th Cir.1994)