**Danny JONES, Plaintiff–Appellant,**

v.

**Harold PLASTER, Sheriff, in his individual and official capacities, Defendant–Appellee.**

No. 94–6135.

United States Court of Appeals, Fourth Circuit.

Argued April 5, 1995.

Decided June 22, 1995.

418

**ARGUED:** Gerald Thomas Zerkin, Gerald T. Zerkin & Associates, Richmond, VA, for appellant. William Carrington Thompson, Chatham, VA, for appellee.

Before ERVIN, Chief Judge, and WILKINSON and WILKINS, Circuit Judges.

Affirmed in part and remanded in part by published opinion. Judge WILKINS wrote the opinion, in which Chief Judge ERVIN and Judge WILKINSON joined.

## OPINION

WILKINS, Circuit Judge:

Danny Jones brought this action pursuant to 42 U.S.C.A. § 1983 (West 1994), claiming that his First Amendment rights were violated when Sheriff Harold Plaster failed to reappoint Jones as a deputy sheriff following Plaster's election. Jones appeals the judgment of the district court entered following a jury trial that resulted in a verdict for Plaster, arguing that the district court applied an incorrect legal standard in ruling on his claim that Plaster unconstitutionally exercised a peremptory strike of a juror and that the district court erred in charging the jury. We find no error in the jury instructions; however, we remand for further proceedings with respect to the jury selection issue.

### I.

In 1991, Jones was a deputy sheriff in Pittsylvania County, Virginia and had been employed in that capacity for approximately four years. During the 1991 campaign for sheriff, Jones actively campaigned for Plaster's opponent; however, Plaster ultimately prevailed. After the November election, Jones was the only deputy who was not reappointed by Plaster. Jones brought this § 1983 action, alleging that the decision not to reappoint him was a result of his political affiliation, political activity, and exercise of his free speech rights, in violation of the First Amendment.

In the course of jury selection, Plaster, who is white, through his attorney, William Thompson, exercised four peremptory challenges to remove all of the black members of the panel from which the jury was to be chosen. Jones, who is black, objected to Thompson's use of the peremptory challenges under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny, arguing that Thompson had discriminated on the basis of race in exercising the peremptory challenges in violation of the Equal Protection Clause. The district court stated, "Okay, as I understand, the plaintiff is making an objection to the defendant's challenging of the only four blacks who are

on the jury, which means, Mr. Thompson, a nondiscriminatory reason must be given for the challenges." Thompson explained that he struck jurors Bigelow and Norman because they "manifested a lack of interest or intelligence in the proceedings" and exhibited a "lack of attention in the courtroom." Thompson stated that he had struck juror Preston because:

> My client made an independent investigation through the Henry County authorities, and we didn't exactly think that his qualifications were such that we wanted him on the panel. It had nothing to do with race.... [T]he reasons that were given to my client were that [Preston] was a follower and not a man who would exercise independent judgment on his own.

With respect to the fourth juror, Macklin, Thompson stated that he was struck "because of his previous law enforcement experience." Jones responded that Thompson had permitted a white juror to be seated with law enforcement experience identical to that of Macklin's and that Preston was a secondary school principal, so the suggestion that Preston lacked leadership ability was clearly pretextual.

The district court ruled, "Mr. Preston, that certainly doesn't wash. He wouldn't be a principal unless he had some leadership abilities. It's too coincidental to let stand, Mr. Thompson." Thompson then inquired whether the ruling was solely with respect to Preston, to which the court responded, "On the four.... I think the fact that there were only four blacks on the panel and all four of them were struck, and the reasons are just not substantial enough. It's just a clean sweep." After discussing the possible remedies, the court indicated that the parties were to exercise their peremptory strikes again from the same panel list.* Thompson expressed a desire to obtain additional information from his client and inquired whether he would be foreclosed from striking any of the four jurors he had struck during the first round of jury selection. The court indicated that Thompson would be permitted to consult with his client, but that "when you strike a

black this go-round you're going to have to have a sound articulable reason for doing so other than race."

The parties again exercised their strikes, and Thompson struck only one black, Preston. Jones' attorney again questioned Thompson's use of the challenge to strike Preston, emphasizing that although the same pattern of strikes was not present, in view of the earlier ruling by the court that Thompson had engaged in discriminatory conduct, the second strike of Preston must have been discriminatory. Thompson responded:

> Before the second strike, Your Honor please, I went back to my client, who had this juror investigated through a black Deputy Sheriff in Henry County. The information came back to him that ... [i]t's a question of lack of conviction and judgment in some situations there. In other words, they had had some problems with him, and he equivocated and shifted the blame in a particular incident.... [Plaster] was told that in [the deputy's] opinion [Preston] wasn't qualified, that he was a person, who from previous experience, lacked conviction....

Thompson also stressed that his decision to strike Preston was not racially motivated. Although noting that the matter troubled him, the district judge overruled the objection to Thompson's use of the peremptory challenge to strike Preston, explaining:

> The history of the thing troubles me some, just to be frank with you, but lack of conviction and lack of leadership aren't exactly the same thing, and the information is he did sorta go with the flow is I assume what you're saying to me and did not perhaps stand up for what he believed in, and that was the basis of it, and particularly given the fact that two blacks are left on the panel and the fact that the plaintiff struck one of the other blacks. I'll overrule the objection.

During the trial, Jones sought to show that Plaster's decision not to reappoint him had been made because of his political activity. Plaster denied that he had considered Jones'

---

* Because the identical panel list was used to select the jury during the second selection process, this

remedy ordered by the district court was within its discretion.

political activity in any way and asserted that the decision not to reappoint Jones was based strictly on his job performance. Prior to trial, Jones had submitted a request for the district court to charge the jury that if it found that Jones' political activity had been a substantial motivating factor in Plaster's decision not to reappoint Jones, it should consider whether Plaster had proven by a preponderance of the evidence that he would have decided not to reappoint Jones even if he had not been influenced by the improper motive, in which case it should find for Plaster. During the charge conference, however, Jones maintained that he did not wish for the court to give this instruction, arguing that because Plaster had testified that he did not consider Jones' political activity at all, and had not testified that he would have reached the same conclusion even if he had considered it, the evidence did not support the charge.

The district court rejected this argument. It charged the jury that Jones bore the burden of proving that his political activity or protected speech was a substantial or motivating factor in Plaster's decision not to reappoint him. The court further instructed the jury that if it so concluded, the burden shifted to Plaster to show that he would not have reappointed Jones even had he not considered an improper factor. The court informed the jury that if it found that Plaster had carried this burden it should find for him. The jury returned a general verdict in favor of Plaster.

## II.

Jones first asserts that the district court applied an incorrect legal standard in analyzing whether Thompson had exercised the strike of Preston in an unconstitutional manner. He contends that during the second round of jury selection, the district court should have required Thompson to show by a preponderance of the evidence that he would have struck Preston even if he had not been black and that the district court erred in simply requiring Thompson to articulate a nondiscriminatory reason for the strike.

■ It is well settled that a civil litigant's exercise of a peremptory jury challenge on account of race violates the equal protection rights of the prospective juror and that the opposing party has standing to object in order to raise the excluded person's rights. *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). When a party challenges the exercise of a peremptory challenge on equal protection grounds, that party bears the burden of proving intentional discrimination by the opposing party. *Batson,* 476 U.S. at 93, 106 S.Ct. at 1721 ("As in any equal protection case, the burden is, of course, on the [party] who alleges discriminatory selection ... to prove the existence of purposeful discrimination.") (internal quotation marks omitted); *Hernandez v. New York,* 500 U.S. 352, 373, 111 S.Ct. 1859, 1874, 114 L.Ed.2d 395 (1991) (O'Connor, J., concurring). The Supreme Court has delineated a burden-shifting procedure for courts to follow in analyzing a claim of purposeful discrimination in the jury selection process. *Hernandez,* 500 U.S. at 358–59, 111 S.Ct. at 1865–66 (plurality); *United States v. Malindez,* 962 F.2d 332, 333 (4th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 215, 121 L.Ed.2d 154 (1992). The party raising the equal protection challenge must first establish a prima facie case of purposeful discrimination in the selection process considering all of the "relevant circumstances, including whether there has been a pattern of strikes against members of a particular race." *Edmonson,* 500 U.S. at 631, 111 S.Ct. at 2088; *Hernandez,* 500 U.S. at 358, 111 S.Ct. at 1865. Once a prima facie case of discrimination is established, the burden shifts to the party whose conduct is challenged to come forward with a nondiscriminatory explanation for the use of the challenge. *Hernandez,* 500 U.S. at 358–59, 111 S.Ct. at 1865–66. To satisfy this burden, the party need offer only a legitimate reason for exercising the strike, *i.e.,* one that does not deny equal protection; the reason need not be worthy of belief or related to the issues to be tried or to the prospective juror's ability to provide acceptable jury service. *See Purkett v. Elem,* — U.S. —, —, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam). The trial court must then decide whether the party challenging the selection

process has proven that intentional discrimination was a substantial or motivating factor in the decision to exercise the strike. *Hernandez,* 500 U.S. at 359, 111 S.Ct. at 1866; *United States v. McMillon,* 14 F.3d 948, 952 & n. 3 (4th Cir.1994); *see Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 270 n. 21, 97 S.Ct. 555, 566 n. 21, 50 L.Ed.2d 450 (1977). If the court concludes, or the party admits, that the strike has been exercised in part for a discriminatory purpose, the court must consider whether the party whose conduct is being challenged has demonstrated by a preponderance of the evidence that the strike would have nevertheless been exercised even if an improper factor had not motivated in part the decision to strike. *See Howard v. Senkowski,* 986 F.2d 24, 26–30 (2d Cir.1993). If so, the strike stands. *See id.*

■ In detailing the particulars of the *Batson* proof scheme, we are mindful that its sole purpose is to help courts and parties answer, "not unnecessarily evade[,] the ultimate question of discrimination *vel non.*" *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). A finding by the district court concerning whether a peremptory challenge was exercised for a racially discriminatory reason is given great deference by this court; we review that finding only for clear error. *See Hernandez,* 500 U.S. at 364–65, 111 S.Ct. at 1868–69 (because finding of discrimination turns largely on credibility determinations, findings of district court in *Batson* challenge are reviewed for clear error); *id.* at 372, 111 S.Ct. at 1873 (O'Connor, J., concurring) (agreeing with plurality that "trial court's finding as to discriminatory intent" is reviewed for clear error). Indeed, as we have previously noted, the district court is especially well-suited to resolve challenges to peremptory strikes of jurors because it has observed with its own eyes the very act in dispute. *See McMillon,* 14 F.3d at 953; *United States v. Grandison,* 885 F.2d 143, 146 (4th Cir.1989), *cert. denied,* 495 U.S. 934, 110 S.Ct. 2178, 109 L.Ed.2d 507 (1990). However, when the district court fails to articulate its findings, remand for further proceedings may be necessary. *See United States v. Joe,* 928 F.2d 99, 103–04 (4th

Cir.), *cert. denied,* 502 U.S. 816, 112 S.Ct. 71, 116 L.Ed.2d 45 (1991).

■ The ruling of the district court is so unclear that we cannot determine on the present record whether the ultimate conclusion of the district court to overrule Jones' objection may be sustained. First, the district court failed to rule squarely that it found that Thompson's strike of Preston was not motivated by a racially discriminatory purpose or even that the reason offered by Thompson was a truthful and race-neutral reason. Although the district court was entitled to consider the fact that the final jury included black citizens, *Grandison,* 885 F.2d at 147; *United States v. Lane,* 866 F.2d 103, 106–07 (4th Cir.1989), it was not entitled to allow the presence or absence of other black jurors to resolve the question of whether Thompson was motivated by race in the exercise of this particular strike. *See Joe,* 928 F.2d at 103. In addition, we cannot discern with certainty whether the district court ruled that Thompson was acting for a discriminatory purpose during the first round of jury selection, although we presume that it did or there would have been no legal justification to require the parties to proceed with peremptories a second time. And, during the second round of jury selection, the record does not indicate whether the district court ruled that Thompson, who apparently had just been found to have struck Preston for a discriminatory reason, had carried his burden of showing that he would have struck Preston even if he had not been motivated in part by an improper purpose. *Cf. Doss v. Frontenac,* 14 F.3d 1313, 1317 (8th Cir.1994) (rejecting claim that since party earlier had been found to have violated *Batson,* reason offered for later exercise of peremptory challenge was necessarily pretextual, concluding that factual finding by district court that explanation given for the strikes were truthful and race-neutral was not clearly erroneous). Accordingly, on this record, we cannot determine whether the district court applied the proper legal analysis in reaching its decision to overrule Jones' objection, and we have no express finding by the district court on Thompson's motivation. Therefore, we remand for further proceedings in order for

the district court to clarify its ruling and render a finding on whether Thompson's strike of Preston requires remedial action. We emphasize that this ruling need not be elaborate. The district court need only articulate whether the strike was exercised for a discriminatory purpose, and, if so, whether the strike would have been exercised even had a discriminatory purpose not been present.

### III.

Jones next contends that the district court erred in instructing the jury that if it concluded that Jones' political activity was a substantial or motivating factor in Plaster's decision not to reappoint him, it should consider whether Plaster had shown by a preponderance of the evidence that he would have reached the same decision even if the improper motive had not been considered, claiming that the evidence did not support the charge. The gist of Jones' claim is that the jury was given two conflicting versions of the facts and was required to choose one of them—that it could not have chosen on the evidence presented to disbelieve Plaster's assertion that he did not consider Jones' political activity in reaching the decision not to reappoint him, but nevertheless conclude that Plaster would have reached the same conclusion even if he had not been motivated by the improper consideration. We disagree.

When a jury is presented with conflicting evidence, it may choose to believe the evidence presented by either of the parties, or it may choose to believe a portion of each party's evidence, concluding that the truth lies somewhere in the middle. *See Gooden v. Neal,* 17 F.3d 925, 927–29 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). The instructions given by the district court were supported by the evidence and were proper under *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

### IV.

In sum, we conclude that the jury instructions given by the district court were proper.

However, the record before us does not permit us to say with any assurance that the district court ruled on the ultimate question of discriminatory motive or applied the proper legal standard in ruling on Jones' *Batson* challenge. Accordingly, we remand to the district court to clarify its ruling on the *Batson* issue.

*AFFIRMED IN PART; REMANDED IN PART.*