**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                            No. 95-5172

RICKY LEE GROVES,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                            No. 95-5173

WILLIE LEE STRICKLAND,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Chief District Judge.
(CR-94-97-F)

Submitted: April 30, 1996

Decided: June 25, 1996

Before HAMILTON and WILLIAMS, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Robert Willis, LAW OFFICES OF ROBERT WILLIS, Raleigh, North Carolina; Brian E. Clemmons, YOUNG, MOORE & HENDERSON, P.A., Raleigh, North Carolina, for Appellants. Janice McKenzie Cole, United States Attorney, Christine B. Hamilton, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Ricky Lee Groves appeals his conviction and sentence of life plus 60 months for engaging in a continuing criminal enterprise (CCE), 21 U.S.C.A. § 848 (West Supp. 1996), trading food stamps for crack, 7 U.S.C.A. § 2024(b) (West 1988 & Supp. 1996), and use of a firearm in a drug trafficking offense. 18 U.S.C.A. § 924(c) (West Supp. 1996). Willie Lee Strickland appeals his conviction and 252-month sentence for crack conspiracy, 21 U.S.C.A. § 846 (West Supp. 1995), and crack distributions. 21 U.S.C.A. § 841 (West 1981 & Supp. 1995). We affirm.[1]

The government's evidence at Appellants' joint trial established that Ricky Groves's brother Charlie Groves sold crack for several years from his home at 3535 Government Road in Clayton, North Carolina. When Charlie Groves went to prison in 1992, Ricky Groves's mother, Alva Mae, moved into Charlie's trailer and Ricky Groves continued the crack business. Ricky Groves lived in Raleigh but went to the trailer on Government Road every day. Willie Strick-

_____

[1] Appellants' Motion for Leave to File Statistical Information is granted. We have considered the information attached to the Motion.

2

land had supplied Charlie and continued to supply Ricky Groves. Ricky Groves also obtained crack from several Haitians, principally "Haitian Roger." Roger supplied Ricky's sister, Margaret Woodard, who lived next door, and his niece, Pam Woodard. Runners who sold the crack to people who drove along Government Road obtained crack from Ricky, his mother, his sister, or co-conspirator Tim McCullers and were paid in crack, cash, or both. Ricky Groves also traded crack for foodstamps, firearms, and various other items. During the course of an extended investigation, about twenty-six controlled buys of crack were made by a federal agent accompanied by a confidential informant. Audio and video recordings were made of most of these transactions.

On appeal, Groves and Strickland first contend that the government unconstitutionally exercised three peremptory strikes against black jurors. During jury selection, the attorneys for Groves and Strickland objected to the government's use of three peremptory strikes against three young black males. The government attorney, who was also black, explained that the first juror, Mr. McCrowie, was struck because he was the only single person on the list at that point, and that the second, Mr. Autry, was struck because "he was looking at me in a way I didn't particularly care for." The third black juror was from an area where Groves had relatives living. The district court accepted the government attorney's explanations and found that no intentional discrimination had occurred.

Later, Groves's attorney again raised the issue, arguing that the government was inconsistent in not striking a white male juror who was divorced as a single person like the first black male who was struck. He asked the district court to reinstate the first black juror who was struck, which the court declined to do. The government attorney stated that he was picking a jury for another attorney who would try the case, and was generally attempting to follow her instructions. The district court again found no intentional discrimination.

A party challenging the exercise of a peremptory strike on racial discrimination grounds must make a prima facie case of intentional discrimination, after which the burden shifts to the other party, who must offer a race-neutral reason for exercising the strike. Batson v. Kentucky, 476 U.S. 79 (1986); Jones v. Plaster, 57 F.3d 417, 420 (4th

3

Cir. 1995). A satisfactory reason need only be based on something besides race; it need not be rational or credible or have any relationship to the trial. Purkett v. Elem, #6D6D 6D# U.S. ___, 63 U.S.L.W. 3814 (U.S. May 15, 1995) (No. 94-802). The trial court must then decide whether intentional discrimination was a motivating factor for the peremptory strike. Its decision is reviewed for clear error. United States v. Hernandez, 500 U.S. 352, 359, 364-65 (1991) (finding concerning discrimination is credibility determination).

Here, the government offered race-neutral reasons for striking all three black jurors.[2] Groves and Strickland contend that the government's reason for striking McCrowie--that he was single--was inconsistent with its failure to strike a white male who was divorced, and that a policy of striking all never-married jurors would be discriminatory because black adults are more likely than whites to be unmarried. They also suggest that the district court failed to address their argument that the reason offered by the government for striking McCrowie was pretexual. However, the district court heard the argument for reconsideration of its prior ruling and again found no Batson violation.

The government attorney who handled the trial (and whose instructions were being followed by the attorney who exercised the peremptory strikes) states in the government's appeal brief that she believes young unmarried people are less desirable as jurors because they have not yet had to make difficult decisions, while divorced people often have had to make such decisions and compromises. Whether or not such a view is true, it is a consistent and race-neutral reason for striking young persons who have never been married.

Appellants contend that the government's explanation for the strike against Autry was not credible, but they mischaracterize the reason for the strike. The government attorney did not say he struck Autry because of the way he looked, but because of the way he was looking at the government attorney. We find that the government offered race-neutral reasons for striking both McCrowie and Autry and that the

_____

**2** The preliminary question of whether a prima facie showing of intentional discrimination had been made thus became moot. Hernandez, 500 U.S. at 359.

4

district court did not clearly err in finding that there was no <u>Batson</u> violation.

Groves contends that the evidence was insufficient to support his CCE conviction because it was insufficient to convict him of conspiracy (Count 1) or the distribution counts (Counts 4-11, 21, 31, 32, and 34).[3] A conviction must be sustained if there is substantial evidence, taken in the light most favorable to the government, to support a finding of guilt. <u>Glasser v. United States</u>, 315 U.S. 60, 80 (1942). The elements which the government was required to prove to convict Groves of participation in a continuing criminal enterprise are: (1) that Groves committed a felony violation of the federal drug laws; (2) that the violation was part of a series of violations of the drug laws; (3) that the series of violations were undertaken by Groves in concert with five or more persons with respect to whom Groves occupied a position of organizer, supervisor, or any other position of management; (4) that Groves obtained substantial income or resources from the continuing series of violations. <u>United States v. Heater</u>, 63 F.3d 311, 316-17 (4th Cir. 1995). At least three predicate violations of the drug laws must be proved, of which one may be a conspiracy under 21 U.S.C.A. § 846 (West Supp. 1995). <u>United States v. Ricks</u>, 882 F.2d 885, 891 (4th Cir. 1989).

Groves argues that three of the other named conspirators, Lonnie Morrison, Tim McCullers, or Baltasaras Romilus (Haitian Bill), were engaged in separate conspiracies.[4] While the government's witnesses may not have testified about direct dealing between Groves and these three, there was abundant evidence that Groves conspired with

_____

[3] After Groves was convicted, the district court vacated his conviction for the conspiracy and all the distribution counts. It is unclear why the substantive counts were vacated. However, a defendant's conduct may be a predicate offense for CCE purposes even without a conviction for that conduct. <u>United States v. Apodaca</u>, 843 F.2d 421, 432 (10th Cir.), <u>cert. denied</u>, 488 U.S. 932 (1988).

[4] McCullers and Romilus pled guilty to the conspiracy count before Appellants went to trial. Lonnie Morrison is identified in the presentence report as a street dealer for Groves, but runner Travis Walker testified that Morrison had his own crack business. Morrison pled guilty to two crack distribution counts and one count of trading food stamps for crack.

numerous people to violate federal drug laws. Runner Larry Horton testified that Groves's other runners included Eric Chris, James Lemon, Ricky McNeil, Malcolm Tomlinson, and "Soldier Boy."

Groves also contends that there was insufficient evidence to prove the substantive distribution counts because the indictment gave specific months (Counts 4-11) or specific dates (Counts 21, 31, 32, 34) when the distributions occurred, while the runners who testified at trial were not specific about dates. However, there was specific testimony from Detective Alfred Linton of the Clayton Police Department, and Sergeant Clyde Berube, of the Johnston County Sheriff's Department, about a transaction on June 23, 1993, in which Groves was shown to be the source of the crack purchased by the undercover agent for food stamps in a videotaped transaction. Runner Larry Horton testified that Groves was the source of the crack he sold to an undercover agent for food stamps on September 30, 1993. This transaction was audio taped.**5**

The evidence was thus sufficient to convict Groves of the offenses which were charged in Counts 21 and 34 under 21 U.S.C.A. § 841, and in Counts 61 and 73 under 7 U.S.C.A. § 2024(b). Because there was substantial evidence that Groves committed three felony violations of the drug laws by participating in the crack conspiracy and the crack transactions on June 23, 1993, and September 30, 1993, the § 848 conviction will be affirmed. Groves makes the same claim of insufficient evidence with regard to his convictions for trading crack for food stamps and the argument is without merit for the same reason. Groves concedes that the evidence that he traded firearms for crack was sufficient to convict him under § 924(c), but suggests that the testimony was not credible. The credibility of witnesses is not reviewable on appeal. United States v. Saunders , 886 F.2d 56, 60 (4th Cir. 1989).

---

**5** Government Exhibits 10 and 10A were the crack and the lab report for the June 23, 1993, controlled buy involving Ricky Groves and runners James Lemon and William (Red) Woodard. Government Exhibit 87 was a videotape of the transaction. Government Exhibit 85 was an audio tape of the September 30, 1993, controlled buy from runners Larry Horton and Eric Chris.

Strickland first argues that there was insufficient evidence to convict him of conspiracy because there was no testimony that he conspired with Lonnie Morrison, Timothy McCullers, or Baltaras Romilus (Haitian Bill). However, there was ample evidence that he supplied crack to Ricky Groves regularly throughout the conspiracy; this evidence is sufficient to sustain his conviction.

Strickland also contends that there was insufficient evidence to support his substantive distribution convictions because the government's witnesses did not give the specific dates of his distributions. The substantive counts charged Strickland with distributions of more than 50 grams of crack in April, August, October, and December 1993, and in February, April, and June 1994. Runners Horton, Woodard, Tomlinson, and Walker all testified that Strickland supplied Groves with crack throughout the conspiracy. Horton testified that Strickland came to see Groves about once a week. Given that the jury found the government's witnesses credible, this evidence was sufficient for the jury to find that Strickland distributed crack to Groves in the months charged.

Strickland next contests the admission of an address book seized during a December 1993 search of his apartment when he was being sought as a murder suspect. He contends first that the search warrant affidavit was insufficient because the sources of the information contained in it were not identified. Second, he argues that the affidavit failed to establish probable cause that an address book would be found in the apartment. On appeal, he further argues, in effect, that the warrant was overbroad in authorizing seizure of the address book because it was not evidence pertinent to the murder.

An affidavit in support of a warrant application must provide the magistrate with information sufficient for determining the existence of probable cause that specific evidence of a crime will be found in the place to be searched. Illinois v. Gates, 462 U.S. 213, 239 (1983). However, a reviewing court takes into account the totality of the information made known to the magistrate. Massachusetts v. Upton, 466 U.S. 727, 732-34 (1984). The affidavit submitted by Police Chief Toppings, of Four Oaks, North Carolina, described the murder in detail but did not make clear that he personally obtained the information from the witnesses to the murder. Toppings testified that he dis-

7

cussed his investigation with the magistrate before the warrant was issued, so that the magistrate was aware of the sources of the information. In this circumstance, we find that the district court did not err in finding that the warrant was based on probable cause.

A magistrate may not authorize a search broader than the scope of the probable cause showing. United States v. Christine, 687 F.2d 749, 753 (3d Cir. 1982). The address book was listed in the warrant application as an item sought as evidence of a crime and the identity of a person participating in a crime, along with handguns, bullets, clothes, shoes, and pictures. Toppings testified that he included the address book because it would be a help in finding Strickland if he were not apprehended quickly. He said the magistrate did not question him about the address book. Even if the address book was not properly listed on the warrant application because it was not evidence of the murder or the identity of the suspect (which was not really in doubt), the admission of the address book was harmless error at most. Chapman v. California, 386 U.S. 18, 23-24 (1967). It is not clear from the materials presented on appeal what part, if any, the address book played in the government's case against Strickland, but in view of the other evidence against him, we are satisfied that any error in the admission of the address book was harmless beyond a reasonable doubt.

Following the jury's verdict, the probation officer recommended that Groves be held responsible for 72.9 kilograms of crack and 1792 grams of cocaine, and that Strickland be held responsible for 7.1 kilograms of crack. USSG § 2D1.1, 2D1.5.[6] Both Groves and Strickland objected to the amount of crack attributed to them on the grounds that the trial testimony did not establish those amounts and that the information from unidentified co-conspirators contained in the presentence report was unreliable.

Groves contends that the district court clearly erred in adopting the recommended finding that he was responsible for 72.9 kilograms of crack because the presentence report listed crack amounts reported by unidentified co-conspirators and the amounts do not correspond with

_____

[6] United States Sentencing Commission, Guidelines Manual (Nov. 1994). Groves and Strickland were sentenced in February 1995.

8

the trial testimony. However, the trial testimony firmly established that Groves was responsible for the distribution of more than 1.5 kilograms of crack over the course of the conspiracy. That amount gave him an offense level of 38, the highest possible under USSG § 2D1.1, which was increased to 42 under USSG § 2D1.5 because of his CCE conviction. Exactly how much Groves had distributed in excess of 1.5 kilograms is immaterial. The district court's adoption of the recommended findings was not clearly erroneous.

Strickland concedes that the testimony of certain witnesses at trial establishes his responsibility for more than 1.5 kilograms of crack, but argues that the district court should have found their testimony unreliable because it was vague and imprecise. Because the witnesses consistently testified that Strickland supplied Groves on a weekly basis throughout the life of the conspiracy, the district court did not clearly err in finding that Strickland was responsible for more than 1.5 kilograms of crack. Moreover, the court did not clearly err in finding that he was more than a mere courier.

We therefore affirm Appellants' convictions and sentences. Appellants' Motion to File Statistical Information is granted. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

9