**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4721

LERRY BLOTCHER, a/k/a Troy Wilson,
a/k/a Boogie, a/k/a Larry Blutcher,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, District Judge.
(CR-94-149-F)

Argued: June 4, 1997

Decided: April 27, 1998

Before WIDENER and MURNAGHAN, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Vacated and remanded by published opinion. Judge Widener wrote
the opinion, in which Judge Murnaghan and Senior Judge Phillips
concurred.

_____

**COUNSEL**

**ARGUED:** William Webb Plyler, MCMILLAN, SMITH &
PLYLER, Raleigh, North Carolina, for Appellant. John Samuel
Bowler, Assistant United States Attorney, Raleigh, North Carolina,
for Appellee. **ON BRIEF:** Janice McKenzie Cole, United States
Attorney, Raleigh, North Carolina, for Appellee.

**OPINION**

WIDENER, Circuit Judge:

Lerry Blotcher appeals his conviction of one count of conspiracy to distribute crack cocaine on the grounds that the district court improperly refused to allow Blotcher to exercise a peremptory strike against a juror.* This is the second time this matter has been before us, the court having remanded the case for the district court to set forth its findings as required by the three-part analysis of Batson v. Kentucky, 476 U.S. 79 (1986). United States v. Blotcher, No. 95-5590, slip op. 92-93 (4th Cir. 1996) (unpublished[table decision 92 F.3d] 1182). The district court explained that it found as a fact that the defendant's proffered reasons for the challenged strikes were pretextual, and that the government had demonstrated the strikes were motived by purposeful discrimination.

The record does not support the court's conclusion that Blotcher's explanation that the juror in question appeared to be a conservative person was pretextual, and for that reason we vacate Blotcher's conviction and remand the matter for a new trial.

I

On November 9, 1994 Blotcher was indicted on three counts, they included one count of conspiracy to distribute crack cocaine under 21 U.S.C. § 846, and two counts of distributing crack cocaine under 21 U.S.C. § 841. Jury selection was performed on March 21, 1995 and of the 36 jurors in the initial pool, there were 29 white jurors and 7 black jurors. Following voir dire, Blotcher, who is black, began listing the jurors he wanted to strike. After he challenged three jurors the government objected, raising a Batson challenge based on a pattern of alleged racial discrimination against the white jurors. The court deferred ruling on the matter. Moving on, Blotcher indicated through his attorney that he wanted to strike juror number nine, Mr. Hedgepeth. The government objected again, and after Blotcher indicated he wanted to strike a fifth white juror, juror number 10, the court enter-

_____

*He was acquitted of the two distribution counts.

2

tained the government's challenge that the strikes were racially motivated and required Blotcher to state his reasons for striking those jurors. Blotcher's counsel responded "I've discussed it with my client, your honor. My client has told me that these are the people he does not want on his jury." The court indicated that it would let Blotcher finish his challenges, noting that there were then three black jurors on the panel.

Blotcher finished his first round of challenges by striking juror number 11, also a white juror. The court noted that the six jurors struck by Blotcher were white and reminded him that "[t]he Batson challenge cuts both ways." While the court allowed the strikes to stand at that time, it indicated that defense counsel should discuss with Blotcher the need for specific reasons for his strikes, and asked the government if it wanted to pursue the matter further. The government insisted that it was necessary to establish the basis for the last four strikes, so the court required that before the next round of strikes defense counsel consult with Blotcher in order to provide specific reasons for each strike.

After consulting with Blotcher, defense counsel explained that in deciding who to strike "my client tells me that there are a number of things, that he's just attempting to size the jurors up, and that there are -- he's doing the best he can to determine who would be a fair juror in this case. He's using his -- all the knowledge he has to make that determination." As to the first strike Blotcher's counsel explained that the juror had made a statement to the effect that she did not like drugs. Both the court and the government accepted that reason. As to the second, third, fifth, and sixth strikes defense counsel explained:

> There is a lot, as to the other jurors. He [Blotcher] is particularly concerned about the older people on the jury. He told me coming in that he wanted young -- he feels like young people can relate better to his case, particularly since it's a drug case. He's a younger person, and that relates to Mr. Hines, Mr. Vereen, Mr. Whitty and Ms. Taylor.

The government and the court accepted that explanation for striking those four jurors.

With regard to juror number nine, Mr. Hedgepeth, who was the fourth juror Blotcher wanted struck, defense counsel stated:

> Mr. Hedgepeth, he [Blotcher] simply says appears to be a very -- just from his appearance, a conservative person.
>
> Obviously, we do not have a lot of information to go on because there has not been a lot of in depth questioning of the jurors. But from his appearance, he would appear to be a conservative type person, which we believe would not be the best juror in this case for him.

The government argued that this was not a valid reason for striking Mr. Hedgepeth because all the jurors were "neatly and well dressed" and "there is nothing about Mr. Hedgepeth's dress that is in any way more conservative than anyone else that's on this jury." The court agreed and though it excused the other challenged jurors, it left Mr. Hedgepeth on. After defense counsel objected, the court, with understanding, explained its skepticism as to the government's challenge:

> I find this whole process something that is unfathomable. I have no way of knowing the reasons why Mr. Blutcher[sic] would not want Mr. Hedgepeth. I just have no reason for it. I'm frank to say that in my view the reason for the peremptories is you've got a hunch that somebody's going to go against you, you just strike them. I've always felt-- it's hard to articulate a reason. It's pretty ridiculous.

The government argued further, and the court, noting the defendant's objection, determined that it would not excuse Mr. Hedgepeth because it didn't "perceive any rational reason for getting Mr. Hedgepeth off."

There followed another round of jury selection, during which Blotcher exercised three peremptory strikes which the government did not challenge. [The father of one juror was a police officer for 20 years, another juror was in the air force.] At that time the district court returned to the issue of the Hedgepeth strike. The court explained its denial of the strike by saying:

4

> You [Botcher's counsel] made some comment about his being conservative. He's not dressed conservatively. He has a sport shirt on. You made some comment about wanting younger people. He is not an older person. And I find that -- I don't see any reason that was given that would strike me as being other than pretextual, I don't remember any specific reason offered by your client relating to that person that I would find to have validity, and I so find. The comments that he made concerning not wanting conservative people was [sic] pretextual.

The court then invited the defense counsel to inquire as to why Blotcher thought the juror appeared conservative. After inquiring, defense counsel explained that Hedgepeth appeared conservative to Blotcher because "[h]e's got his hair kind of nice and he's got nice glasses on." The government interjected at that moment that none of the black jurors had been struck by Blotcher, even though some were wearing ties. Without further explanation the court found Blotcher's argument pretextual and refused to strike Hedgepeth. The defense reasserted its objection to the notion that his client had engaged in "racial misconduct", and noted that the jury at that time was composed of four black jurors while the remaining majority was white.

After a two day trial the jury acquitted the defendant of the charges of distributing crack cocaine and convicted him of the conspiracy charge.

Blotcher appealed the district court's refusal to strike Hedgepeth. He argued that the district court did not follow the three-step analysis of Batson by conflating the second and third steps, and that the court erred by requiring his explanation be not only race-neutral, but also rational. Finally, he contended that the prosecution had not met its burden of proving purposeful discrimination. Blotcher, slip op. at 7. We found the record to be inconclusive not only as to whether the district court properly executed the three-part analysis, but also whether it had made a finding as to whether prosecution had met its burden of proving purposeful discrimination. Blotcher , slip op. at 7. "Based on the confusion in the transcript and the absence of the necessary Batson findings" we remanded the matter for further proceedings so that the district court could clarify its order. Blotcher, slip op. at 9.

5

On remand the district court in an order of August 27, 1996 stated that further proceedings were not necessary because the court had a clear recollection of the events related to the <u>Batson</u> challenge, as well as the court's reasons for sustaining the government's objection to the defendant's strike. The court then set forth its findings as required by <u>Batson</u>.

> 1. The United States made out a <u>prima facie</u> case of purposeful discrimination in noting that the defendant, who is an African-American, had demonstrated a discriminatory pattern by exercising six of its ten peremptory challenges to remove white veniremen from the jury box.

> 2. The court and the United States accepted the defendant's explanation for removing five of the six veniremen; as to the sixth, the defendant proffered the race-neutral explanation that the juror "appears to be a very-- just from his appearance, a conservative person. . . . He's got his hair kind of nice and he's got nice glasses on." This explanation does not have to state "a reason that makes sense;" it merely must not be based on race. <u>Purkett v. Elem</u>, 115 S. Ct. 1769, 1771 (1995).

> 3. After hearing from the defendant and the United States, in light of all the circumstances and weighing the relative persuasiveness of the arguments by "observing with its own eyes the very act in dispute," <u>Jones v. Plaster</u>, 57 F.3d 417, 421 (4th Cir. 1995) (citations omitted), the court found as a fact that the defendant's proffered reasons for exercising the challenged strikes were pretextual, and that the United States demonstrated that those strikes were motivated by purposeful racial discrimination.

On August 30, 1996 the defendant moved the court to reconsider its order and to conduct a hearing on the matter, which the court denied. On September 5, 1996 the defendant timely filed a notice of appeal to this court.

II

The district court's determinations of whether the proffered explanation for the use of a preemptory challenge is pretextual and whether

6

there has been purposeful racial discrimination largely turn on credibility and to those we should ordinarily give great deference. <u>Batson v. Kentucky</u>, 476 U.S. 79, 98 n.21 (1986); <u>Jones v. Plaster</u>, 57 F.3d 417, 421 (4th Cir. 1995). This deference to the district court arises from the fact that its findings are based on credibility determinations. <u>Batson</u>, 476 U.S. at 98, n.21; <u>Jones</u>, 57 F.3d at 421.

At this point we consider the order of the district court on remand, remembering that, in connection with the excusal of juror Hedgepeth at trial, it had considered peremptory challenges to six jurors including Hedgepeth. It sustained the striking of one white juror who didn't like drugs and four white jurors who were older people who would not sympathize with the defendant, who was a young man. These five were struck with the approval of the district court and did not serve on the jury. As to juror Hedgepeth, the court found that the challenge to him was pretextual.

On remand, however, the district court's finding was:

> [T]he court found as a fact that the defendant's proffered reasons for exercising the challenged strikes were pretextual, and that the United States demonstrated that those strikes were motivated by purposeful racial discrimination.

The record simply does not support this finding of fact of the district court. Rather than all of the challenged strikes being pretextual, as found on remand, five of the challenged strikes were specifically upheld by the district court at trial, and those jurors did not serve.

Our remand was for clarification of its ruling as to juror Hedgepeth, but the order of the district court on remand only recited that it had a clear recollection of the events underlying the <u>Batson</u> challenge and repeated that the challenge to Hedgepeth was among the challenged strikes, all of which the court found on remand were pretextual.

Although the district court acknowledged, in its opinion on remand, that the reasons given by Blotcher for the excuse of Hedgepeth were race neutral, it, nevertheless, declined to accept the race neutral reason.

7

To repeat the reasons given at trial:

> Mr. Hedgepeth, he simply says, appears to be a very--just from his appearance, a conservative person.

A.41.

Upon pressing by the United States and further inquiry by the district court as to why Blotcher thought that Hedgepeth was conservative, the court was advised:

> He has got his hair kind of nice and he's got nice glasses on.

A.56.

Blotcher's attorney had given his client's reasoning for striking jurors as follows:

> My client tells me that there are a number of things, that he's just attempting to size the jurors up and that there are--he's doing the best he can to determine who would be a fair juror in this case. He's using his--all the knowledge he has to make that determination.

A.40.

The defendant's attorney further advised the court:

> Your Honor, I would also like the record to reflect that at all times, as the jury's composed right now, that there are four Afro-Americans and the majority of the jurors are white. My client is Afro-American, and I do not believe that he is engaged in any way in any sort of racial misconduct, if you will, by exercising his independent judgment of sizing people up as to who he believes is going to give him a fair trial.

A.56-57. The court rejected the reasoning of the defendant. It found:

8

The comments that he [the defendant] made concerning not wanting conservative people was [sic] pretextual.

A.56.

The district court also found:

Well, I don't perceive any rational reason for getting Mr. Hedgepeth off. I'm not going to excuse him.

A.43. The district court accepted the argument of the government, that Hedgepeth was not dressed any more conservatively than others on the jury, and apparently decided that the reasons given for Hedgepeth's excuse were pretextual for that reason, although not explicitly stated that way.

The difficulty with the district court's holding was two-fold. First, it did not acknowledge the rule that intentional discrimination is not shown by a failure to challenge all jurors with a given characteristic, here, conservative dress, in the words of the district court. United States v. Lane, 866 F.2d 103, 106 (4th Cir. 1989); United States v. Kunzman, 54 F.3d 1522, 1529 (10th Cir. 1995). More importantly, the district court did not acknowledge the rule in Batson that, except for Equal Protection Clause infected racial challenges, a party " . . . ordinarily is entitled to exercise permitted preemptory challenges `for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried . . . ." Batson v. Kentucky, 476 U.S. 79, 89 (1986). We followed this rule from Batson in Lane, 866 F.2d at 106, and the Court has not changed the rule.

Blotcher's attorney all but paraphrased the rule from Batson when he stated that Blotcher was exercising his independent judgment as to who he believed was going to give him a fair trial. That is all that is required, except that the reason given be not racial. "Unless a discriminatory intent is inherent in the . . . explanation, the reason offered will be deemed race neutral." Hernandez v. New York, 500 U.S. 352, 360 (1991).

The district court made the same error here as did the court of appeals in Purkett v. Elem, 514 U.S. 765 (1995) (per curiam), which

9

the Court described as ". . . its whole focus was upon the reasonableness of the asserted non racial motive. . . rather than the genuineness of the motive." Purkett, 514 U.S. at 769. (Italics in original.)

Finally, the Supreme Court has specifically upheld the stated reason for a challenge to ". . . juror number 22 because he had long, unkempt hair, a mustache, and a beard." Purkett, 514 U.S. at 769. The Court held that that reason was "race neutral and satisfies the . . . step two burden of articulating a non-discriminatory reason for the strike." Purkett, 514 U.S. at 769. The Court added that the wearing of beards is not a characteristic that is peculiar to any race, and neither is the growing of long, unkempt hair. We are unable to distinguish that challenge from the one at hand.

Blotcher having given a genuine non-racial reason for his striking of the juror Hedgepeth, we are of opinion that the conclusion of the district court, that the strike was "motivated by purposeful racial discrimination," is clearly erroneous.

It follows that the conviction of Blotcher must be vacated and the case remanded for a new trial.

VACATED AND REMANDED.*
_____
*It is also noteworthy, although not dispositive, that Blotcher accepted the jury without exercising one of his strikes, which he could have used to strike another white juror. See United States v. Joe, 928 F.2d 99, 103 (4th Cir. 1991).

10