**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NADINE Y. THIGPEN, individually and
as Personal Representative of the
Estate of Rahsaun Richardson,
<u>Plaintiff-Appellant,</u>

v.

MARY SHIELDS, Individually and as
an officer of the Prince George's
County Police Department; PRINCE
GEORGE'S COUNTY, MARYLAND;
DAVID B. MITCHELL, Chief,
<u>Defendants-Appellees.</u>

No. 98-1487

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-94-827-PJM)

Argued: May 4, 1999

Decided: June 8, 1999

Before WILLIAMS, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Nancy Chang, CENTER FOR CONSTITUTIONAL
RIGHTS, New York, New York, for Appellant. Jay Heyward Creech,

Upper Marlboro, Maryland, for Appellees. **ON BRIEF:** Kimani Paul-Emile, Laura Davis, CENTER FOR CONSTITUTIONAL RIGHTS, New York, New York, for Appellant. Sean D. Wallace, Upper Marlboro, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The plaintiff contests the district court's denial of her Batson v. Kentucky, 476 U.S. 79 (1986), challenge to jury selection. In her first appeal we concluded that the district court had not provided sufficient reasons for rejecting the Batson claim. On remand, after stating additional reasons, the court held to its decision. The plaintiff then filed a second appeal. We now affirm.

I.

Nadine Thigpen brought a civil rights action over the fatal shooting of her son by Cpl. Mary Shields, a Prince George's County police officer. During jury selection, Shields used peremptory challenges to strike from the panel two African-American women and a man of unidentified race. Thigpen protested on Batson grounds, and the district court rejected this claim, concluding that Thigpen had not established a prima facie case of discriminatory use of peremptory challenges. The jury ultimately found for Cpl. Shields.

In her first appeal to us, Thigpen challenged (1) several evidentiary rulings, (2) a jury instruction, and (3) the district court's denial of her Batson challenge. See Thigpen v. Shields, No. 96-1335, 1997 WL 173226 (4th Cir. Apr. 11, 1997). We affirmed on the first two matters. However, with regard to the Batson claim, we explained that we were

2

unable to evaluate the district court's decision because its analysis was insufficient. We said:

> [W]e can affirm . . . only if the record supports the district court's ultimate determination that Ms. Thigpen had not established a prima facie case. Unfortunately, it does not. The court's entire explanation for its ruling was:"I don't think that there's a prima facie case here, because I think one African male has been seated."

Id. at *3. Because the record did not indicate any other basis for rejecting Thigpen's Batson claim, we remanded for further proceedings.

On remand Thigpen argued that African-American women constitute a distinct protected class for purposes of jury selection.* However, the district court found that Thigpen had waived this novel claim by not raising it before; it therefore treated her claim as based solely on race. The court went on to reject her race-based claim, finding first that she failed to establish a prima facie case under Batson, and second, that Shields had provided valid non-discriminatory reasons for her peremptory challenges. Thigpen has filed a second appeal. Although Thigpen included the hybrid race-sex point in her brief, she abandoned it at oral argument. She continues to press her race-based challenge, and we now consider that.

II.

A Batson challenge involves three steps. First, the party contesting the strikes must make a prima facie case of discriminatory use of peremptory challenges. Batson, 476 U.S. at 96-97; United States v. Grandison, 885 F.2d 143, 145 (4th Cir. 1989). In determining whether that party has established a prima facie case, the trial court considers all relevant circumstances. Those circumstances include, but are not limited to, the pattern of strikes and statements made dur-

_____

*Supreme Court has separately recognized the impropriety of peremptory challenges based solely on sex or solely on race. See J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 128-29 (1994); Batson, 476 U.S. at 89.

ing voir dire. Grandison, 885 F.2d at 146. Second, if the objecting party has made a prima facie case, the burden shifts to the striking party to provide a race-neutral explanation for the peremptory challenge. Batson, 476 U.S. at 97. Third, once the striking party has stated a non-discriminatory reason for its use of a peremptory challenge, the objecting party must provide proof of discriminatory selection, notwithstanding the neutral reason advanced by the striking party. Id. at 96-98.

A district court's findings on a Batson challenge necessarily involve credibility determinations. Therefore, because the district court has observed the voir dire process and the exercise of peremptory challenges, its findings will be given great deference and will be reversed only for clear error. Jones v. Plaster , 57 F.3d 417, 421 (4th Cir. 1995).

The district court first concluded that Thigpen failed to make a prima facie showing on her Batson challenge. It acknowledged that Shields struck two of the three African-American members of the jury panel. However, it gave significant weight to the fact that Shields chose not to use her remaining strike to remove the third African-American member of the panel. That remaining African-American juror went on to serve as a juror at trial. The court's reliance on this point, "although not conclusive, weighs heavily in support of the district court finding of no discrimination." United States v. Lane, 866 F.2d 103, 106 (4th Cir. 1989); see also Grandison, 885 F.2d at 147. Furthermore, the court found nothing in the statements of defense counsel that suggested any discriminatory purpose for the use of peremptory challenges.

The district court did not stop with the first step of the Batson analysis, but went on to provide additional support for its ruling. It examined Shields's stated reasons for her use of peremptory challenges and concluded that they were legitimate. Shields justified striking the first African-American juror on the grounds that the juror was staring at her and lived in Prince George's County (and therefore may have been exposed to negative publicity about the case). She justified striking a second African-American juror because the juror was approximately the same age as Thigpen and because that juror looked down most of the time, except when she raised her head to look at Thigpen.

4

The district court found that these reasons were race neutral. In addition, it determined that Thigpen failed in her burden to prove discriminatory selection, despite the neutral reasons advanced by Shields.

It is entirely legitimate to strike potential jurors on the grounds of their "general appearance and demeanor." Grandison, 885 F.2d at 149; see also, e.g., Purkett v. Elem, 514 U.S. 765, 769 (1995) (finding stated justification that juror had "long, unkempt hair, a mustache, and a beard" to be racially neutral). Likewise, a party may strike potential jurors "having the most obvious common traits[other than race or sex] linking them to the other side." United States v. McMillon, 14 F.3d 948, 953 (4th Cir. 1994) (approving use of peremptory challenge when juror was same age as defendant and both had children). Therefore, the district court did not err in finding that Shields's stated reasons for the use of peremptory challenges were race neutral and valid.

III.

Given the district court's findings and Thigpen's failure to satisfy her burden of proof, we cannot say that the court was clearly erroneous in rejecting Thigpen's Batson claim.

The district court's rejection of Thigpen's Batson claim is affirmed.

AFFIRMED

5