**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-4628

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JASON LOREL MINTER,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington. Robert C. Chambers, District Judge. (CR-03-253)

Argued: May 27, 2005               Decided: September 8, 2005

Before MOTZ and KING, Circuit Judges, and Eugene E. SILER, Jr., Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

Affirmed in part, vacated in part, and remanded by unpublished opinion. Senior Judge Siler wrote the opinion, in which Judge Motz and Judge King joined.

**ARGUED:** Barron Michael Helgoe, Charleston, West Virginia, for Appellant. Stephanie Lou Haines, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Huntington, West Virginia, for Appellee. **ON BRIEF:** Kasey Warner, United States Attorney, Huntington, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

SILER, Senior Circuit Judge:

Jason Minter appeals his conviction and sentence for possession with intent to distribute five or more grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i), and possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). He was sentenced to 360 months of imprisonment.

Minter timely appeals, asserting that (1) the district court erred by denying his Batson challenge, see Batson v. Kentucky, 476 U.S. 79 (1986), raised after the Government removed one of two African-American venire members, (2) the district court abused its discretion by admitting a firearms expert's testimony relating to fingerprinting of guns, (3) the district court erroneously sentenced Minter under mandatory Guidelines, and (4) additional errors, although not individually meriting reversal, amount to reversible error when considered cumulatively. For the reasons stated hereafter, Minter's conviction is AFFIRMED, his sentence is VACATED, and the case is REMANDED to the district court for resentencing.

ANALYSIS

I.  Batson Challenge

The district court denied Minter's objection to the Government's use of a peremptory challenge against Kernus Green, a 73 year-old African-American woman, who was one of two African-American venire members.  "A finding by the district court concerning whether a peremptory challenge was exercised for a racially discriminatory reason is given great deference by this court; we review that finding only for clear error."  Jones v. Plaster, 57 F.3d 417, 421 (4th Cir. 1995) (citing Hernandez v. New York, 500 U.S. 352, 364-365 (1991)).

As this court has observed:

When making a Batson motion, the defendant must first make a "prima facie" showing of purposeful discrimination.  Once [he] establishes a prima facie case of discrimination, the burden shifts to the prosecutor to articulate a race-neutral explanation for the challenge. If the prosecutor satisfies this requirement, the burden shifts back to the defendant to prove that the explanation given is a pretext for discrimination.  The ultimate burden always rests with the opponent of the challenge to prove "purposeful discrimination."

United States v. Grimmond, 137 F.3d 823, 833-34 (4th Cir. 1998) (internal citations omitted).

To establish a prima facie case, Minter "must show, based on all 'relevant circumstances,' that an inference of discrimination has been raised that the prosecutor utilized peremptory challenges to exclude jurors based on their race." United States v. Lane, 866 F.2d 103, 104 (4th Cir. 1989).  Minter objected to the Government's

decision to strike Ms. Green simply by asserting "[i]t seems to be only racially based as a challenge." While this objection was likely "insufficient to trigger an inference of discrimination," id., the district court nevertheless requested that the Government provide its reason for striking Ms. Green. When such reasoning is provided, this court "will not address the question of whether the defendant established a prima facie showing to satisfy Batson." Id. at 105 (citing United States v. Woods, 812 F.2d 1483, 1487 (4th Cir. 1987)).

The Government asserted that it struck Ms. Green because "she didn't appear to have a good memory," she "appeared to have a hard time hearing what the [c]ourt said," and she "fumbled with [an] answer." The burden therefore shifted back to Minter to demonstrate that the Government's articulated race-neutral reason was a pretext for discrimination. See United States v. Joe, 928 F.2d 99, 102 (4th Cir. 1991) ("If the government offers explanations that are facially neutral, a defendant may nevertheless show purposeful discrimination by proving the explanations pretextual.").

Minter asserted that the Government's reasoning "applied to a lot of the jurors, both ones that they left on and ones that they struck." The district court considered this argument and concluded:

> I think that reasoning could well apply to a number of jurors, but the Government offered a race-neutral reason

4

for it and I think that that's sufficient. And it was my observation when she stood to answer questions that she did have some trouble following. Others had equal or greater difficulty with some of the questions who were not African-American. But given that the Government left on Miss Baker, who is African-American, I feel that the Government has demonstrated a race-neutral reason for its strike of Miss Green. So I deny the <u>Batson</u> challenge to the Government's strike.

The district court was in a position to observe Ms. Green and, therefore, to make a determination regarding her ability to hear questions or follow proceedings. The voir dire transcripts do not indicate that the district court clearly erred in its findings relating to Ms. Green. Furthermore, the district court also was in a position to observe the Government:

> In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.

<u>Hernandez</u>, 500 U.S. at 365 (quotation omitted).

The district court noted that other jurors had "equal or greater difficulty with some of the questions who were not African-American." If a "proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at <u>Batson</u>'s third step." <u>Miller-El v. Dretke</u>, ___ U.S. ___, 125 S. Ct. 2317, 2325 (2005). Minter's

5

claims of discrimination rest heavily upon the district court's observation that the Government's reasoning also could apply to other jurors who were not African-American. This observation, however, without additional evidence, is insufficient to support a finding that race was a motivating factor in the Government's decision to strike Ms. Green.

Finally, the district court noted that the Government had not challenged Ms. Baker, the other African-American venire member. A district court is "not entitled to allow the presence or absence of other black jurors to resolve the question of whether [the striking party] was motivated by race in the exercise of this particular strike." Jones v. Plaster, 57 F.3d at 421 (emphasis added). The district court is, however, "entitled to consider the fact that the final jury included black citizens." Id.(emphasis added). The district court's observation of the presence of another African-American juror is not itself impermissible. Ms. Baker's presence on the jury did not form the sole basis for the district court's denial of Minter's Batson challenge.

The district court's denial of Minter's Batson challenge was not clearly erroneous, and reversal is not warranted.


## II. Fingerprint Testimony

Minter argues that the district court improperly allowed a firearms expert to provide fingerprint testimony. "A district

6

court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules." United States v. Abel, 469 U.S. 45, 54 (1984). Furthermore, "[u]nless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required." United States v. Jones, 913 F.2d 174, 177 (4th Cir. 1990) (quoting Schneble v. Florida, 405 U.S. 427, 431 (1972)).

The district court overruled Minter's objections to Special Agent Willard's testimony. Willard testified that he had no knowledge of the gun or bullets being submitted for fingerprint analysis, that he had submitted evidence for fingerprinting approximately fifty times, and that print examiners examined the items and looked for an identifiable fingerprint. He explained that "sometimes [the latent print examiner] can get a print that shows fingerprints but there's not enough on there to show characteristics where he can take that fingerprint and compare it to . . . the fingerprint card." As a result, it was "possible" that a firearm could have one hundred fingerprints but no identifiable prints. Agent Willard admitted that he was not a certified print examiner, had never been to print school, and did not know how many points of comparison were necessary to make a print.

The district court could have reasonably concluded that Agent Willard's testimony was based on his own personal participation and

observations and was not offered as an expert opinion. The district court, therefore, did not abuse its discretion in admitting Agent Willard's testimony.

### III. Sentencing

Minter asserts that the district court sentenced him under the mandatory Sentencing Guidelines. The Government has not opposed Minter's request that his sentence be vacated in light of United States v. Hughes, 401 F.3d 540, 552 (4th Cir. 2005). Consequently, we vacate his sentence and remand the case to the district court for resentencing.

### IV. Cumulative Errors

Minter asserts that a number of issues constitute reversible error when they are considered collectively. He alleges that the district court erred when it refused to suppress gun and drug evidence, when it allowed the case agent to remain in the courtroom, when it admitted Fed. R. Evid. 404(b) evidence, when it instructed the jury, and when it denied his motion for a new trial. He also argues that his trial counsel provided ineffective assistance. Although this court has recognized cumulative error as a basis for reversal, see United States v. Martinez, 277 F.3d 517, 532 (4th Cir. 2002), Minter only suggests the possibility of error and does not develop these arguments. Moreover, these "possible

errors" provide no basis for reversal, even when considered cumulatively, because he has not shown that they are errors. We decline to decide the issue of ineffective assistance of counsel and leave it up to Minter to raise in a motion to vacate under 28 U.S.C. § 2255. <u>See</u> <u>United States v. Richardson</u>, 195 F.3d 192, 198 (4th Cir. 1999).

CONCLUSION

Minter's conviction is AFFIRMED, his sentence is VACATED, and the case is REMANDED to the district court for resentencing.

<u>AFFIRMED IN PART,</u>
<u>VACATED IN PART,</u>
<u>AND REMANDED</u>